UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| JOHN S. CROSWELL, III et al., | ) | |
| Plaintiff, | ) | |
| vs. | ) | 3:08-cv-00445-RCJ-VPC |
| UNION PACIFIC RAILROAD CO. et al., | ) | |
| Defendants. | ) | **ORDER** |

This case arises out of injuries Plaintiff John S. Crowsell, III sustained while working for Defendant Union Pacific Railroad Co. Before the Court is Defendant's Motion in Limine (ECF Nos. 64) and Errata thereto (ECF No. 76, 77). For the reasons given herein, the Court grants the motion.

## I.  FACTS AND PROCEDURAL HISTORY

On or about August 7, 2007, Plaintiff was injured on the job while working for union Pacific Railroad Co. ("Union Pacific" or "Defendant") as a brakeman. (Compl. ¶ 12, ECF No. 1). While riding on the side ladder of a boxcar during a "shoving movement" on Defendant M-I's premises in Battle Mountain, Nevada, Plaintiff collided with loading pallets on the side of the track, knocking him to the ground and seriously injuring him. (*Id.* ¶¶ 12–14). Croswell incurred significant indebtedness as a result of medical bills. (*Id.* ¶ 15). He has also been permanently disabled. (*Id.* ¶ 16).

///

Plaintiff and Linda C. Croswell sued Defendants Union Pacific Railroad Co.; M-I Swaco; M-I Drilling Fluids International, Inc.; M-I, L.L.C. (Nevada); M-I Drilling Fluids L.L.C.; and M-I, L.L.C. (Delaware) in this court on four causes of action: (1)–(2) Federal Employers' Liability Act ("FELA"); (3) Negligence and Premises Liability; and (4) Loss of Consortium. No dispositive motions have been filed, and trial is set for September 7, 2010.

## II. LEGAL STANDARDS

A motion in limine is a procedural device to obtain an early and preliminary ruling on the admissibility of evidence. Black's Law Dictionary defines it as "[a] pretrial request that certain inadmissible evidence not be referred to or offered at trial. Typically, a party makes this motion when it believes that mere mention of the evidence during trial would be highly prejudicial and could not be remedied by an instruction to disregard." *Black's Law Dictionary* 1109 (9th ed. 2009). Although the Federal Rules of Evidence do not explicitly authorize a motion in limine, the Supreme Court has held that trial judges are authorized to rule on motions in limine pursuant to their authority to manage trials. *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984).

A motion in limine is a request for the court's guidance concerning an evidentiary question. *See Wilson v. Williams*, 182 F.3d 562, 570 (7th Cir. 1999). Judges have broad discretion when ruling on motions in limine. *See Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). However, a motion in limine should not be used to resolve factual disputes or weigh evidence. *See C&E Servs., Inc. v. Ashland, Inc.*, 539 F. Supp. 2d 316, 323 (D.D.C. 2008). To exclude evidence on a motion in limine "the evidence must be inadmissible on all potential grounds." *E.g.*, *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004). "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Hawthorne Partners v. AT&T Tech., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993). This is because although rulings on motions in limine may

save "time, costs, effort and preparation, a court is almost always better situated during the actual trial to assess the value and utility of evidence." *Wilkins v. Kmart Corp.*, 487 F. Supp. 2d 1216, 1219 (D. Kan. 2007).

In limine rulings are provisional, and they "are not binding on the trial judge [who] may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000); *accord Luce*, 469 U.S. at 41 (noting that in limine rulings are always subject to change, especially if the evidence unfolds in an unanticipated manner). "Denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted to trial. Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded." *Ind. Ins. Co.*, 326 F. Supp. 2d at 846.

## III.   ANALYSIS

The present motion turns on the applicability of the collateral source doctrine to a FELA claim. Defendant asks the Court to exclude evidence concerning Plaintiff's medical bills, arguing that in the context of a FELA claim such evidence should not be admitted. Plaintiff responds that in this case, unlike in the cases Defendant cites, Plaintiff, not the railroad, paid the premiums for his insurance plan (at least in part), and therefore the evidence should not be excluded. Section 5 of FELA states:

> Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void: *Provided*, That in any action brought against any such common carrier under or by virtue of any of the provisions of this chapter, such common carrier may set off therein any sum it has contributed or paid to any insurance, relief benefit, or indemnity that may have been paid to the injured employee or the person entitled thereto on account of the injury or death for which said action was brought.

45 U.S.C. § 55. On its face, the statute appears to allow setoff only for amounts a railroad employer pays in premiums, but as discussed, *infra*, in this Circuit the benefits received by an employee should

be applied to setoff a FELA award where the collective bargaining agreement ("CBA") provides that a purpose of the employer-paid insurance policy is to indemnify the employer against FELA liability.

Defendant first cites to *Varhol v. National Railroad Passenger Corp.*, 909 F.2d 1557 (7th Cir. 1990) (en banc) for the proposition that such evidence is inadmissible. In *Varhol*, the plaintiff was an Amtrak employee who was injured when the car he was riding in derailed. *See id.* at 1560. Varhol complained inter alia that the trial court had erroneously refused to admit evidence of his pretrial medical bills, which had already been paid by a group insurance policy. *See id.* at 1565. The trial judge had ruled that this evidence was inadmissible as irrelevant because Varhol could not have recovered expenses that had already been paid by the policy, and there was a danger that the jury might misuse such evidence in calculating damages. *Id.* The court of appeals "assume[d], without deciding" that Varhol was not entitled to collect as a measure of damages the amount already paid by the insurance policy. *See id.* (citing 45 U.S.C. § 55). In an instructive footnote, the *Varhol* court stated:

> Section 5 of FELA, 45 U.S.C. § 55, provides that an employer "may set off . . . any sum it has contributed or paid to any insurance, . . . that may have been paid to the injured employee . . . on account of the injury . . . ." Despite the language "any sum it has contributed or paid to any insurance" (emphasis added), most courts have followed the lead of Judge Friendly's concurrence in *Blake v. Delaware & Hudson Ry. Co.*, 484 F.2d 204, 207 (2d Cir. 1973) and have held that an employer is entitled to set off the entire amount of benefits paid by a policy it pays for if the collective bargaining agreement between the employer and the employee's union expressly provides that the purpose of the policy is to indemnify the employer against FELA liability rather than serve as a wage equivalent for the employees. *See, e.g.*, *Folkestad v. Burlington Northern, Inc.*, 813 F.2d 1377, 1382–83 (9th Cir. 1987); *Mead v. National R.R. Passenger Corp.*, 676 F.Supp. 92, 94–95 (D.Md. 1987). The relevant collective bargaining agreement in this case provides that the policy is not a wage equivalent. Thus, under Judge Friendly's reasoning, setoff would have been proper. Compare *Mead*, *supra*, which found setoff proper for Amtrak under the same policy.

*Id.* at 1565 n.1. The court of appeals affirmed the district court. *See id.* at 1566. ("We agree that since Varhol could not recover the expenses reflected in those bills, the amounts of those expenses bore little, if any, relevance to this case.").

Next, Defendant cites to *Folkestad*, a Ninth Circuit case cited in *Varhol*, for the proposition that medical payments are not collateral sources. The *Folkestad* court first noted that:

> In dealing with this issue both in the railroad and maritime cases, courts have been virtually unanimous in their refusal to make the source of the premiums the determinative factor in deciding whether the benefits should be regarded as emanating from the employer or from a "collateral source." Rather, courts have tried to look to "'the purpose and nature of the fund and of the payments' and not merely at their source." *See, e.g.*, *Russo v. Matson Navigation Co.*, 486 F.2d 1018, 1020 (9th Cir. 1973) (per curiam) (quoting *Gypsum Carrier,* 307 F.2d at 534 n.31); *see also Clark v. Burlington Northern, Inc.*, 726 F.2d 448, 450 (8th Cir. 1984); *Haughton v. Blackships, Inc.*, 462 F.2d 788, 790 (5th Cir. 1972); *Hall*, 322 F. Supp. at 95; *Southern Pacific Transportation Co. v. Allen*, 525 S.W.2d 300, 306 (Tex. Civ. App. 1975).

*Folkestad*, 813 F.2d at 1381. The court then recounted the history of the "setoff" provision of § 5 of FELA, 45 U.S.C. § 55, noting that the Circuit in *Russo* had followed the District of Minnesota's opinion in *Hall*. *See id.* In *Hall*, the court looked to the CBA between the union and the railroad. *Id.* The CBA in *Hall* did not expressly address the relation between benefits for on-the-job injuries and FELA liability, but indicated that the employer would pay insurance premiums "much as an employer might at the direction of his employee deduct money from wages and forward them directly to that employee's creditor or bank savings plan." *Id.* (quoting *Hall*, 322 F. Supp. at 96). The *Hall* court therefore concluded that the insurance benefits were paid as a "fringe benefit given in part consideration for the employee's services." *Id.* Because of this relationship, the *Hall* court ruled that the payments under the policy were to be treated as a collateral source—the policy was "a part of the employee's income for services rendered." *Id.* (quoting *Hall*, 322 F. Supp. at 97). The *Folkestad* court then went on to note that in *Blake*, Judge Friendly had commented in concurrence that the refusal to allow setoff to a railroad, where the railroad paid the insurance premiums, resulted in double payment by the railroad employer. *See id.* at 1382. Judge Friendly noted that under the language of the statute the railroad was entitled only to setoff of the amount they had paid in premiums, not the amounts paid by the policies for which they had paid the premiums, and if they

desired to avoid this result in the future, "they can accomplish this by specific provision in the collective bargaining agreement." *Id.* (quoting *Blake*, 484 F.2d at 207 (Friendly, J., concurring)). In a previous case, a defendant employer had accomplished just this by specifying in the CBA that insurance premium payments were not to be regarded as wages, and that payments to injured sailors under the disability plan would be set off against amounts owed under the right to maritime maintenance. *See id.* (citing *Thomas v. Humble Oil & Refining Co.*, 420 F.2d 793 (4th Cir. 1970)).

In 1975, the railroads took Judge Friendly's advice and negotiated a CBA that expressly provided for setoff of benefit payments, which are intended to indemnify railroads against FELA liability. *Id.* The *Folkestad* court ruled that "the purpose and nature of the insurance benefits are controlling." *Id.* (citing *Russo*, 486 F.2d at 1020). The court then found that the purpose of insurance coverage in that case as identified in the CBA was to indemnify the employer against FELA liability, and that therefore setoff should be allowed and the benefits should not be regarded as collateral sources. *See id.* The court reversed the district court and remanded for reduction of the judgment by the amount of insurance benefits received.

The Court must first look to the CBA or related agreements to see if a purpose of the insurance policy is to indemnify Defendant against FELA claims, or if it is more in the way of a fringe benefit for services rendered by Plaintiff. If the latter is the case, Plaintiff's evidence of his medical bills will not be irrelevant. If the former is the case, the evidence will be irrelevant for the purpose of proving damages, though it may still be relevant for the purpose of showing the extent of injuries.

Defendant proffers evidence that the 1975 Health and Welfare Agreement is still in force and applies to the parties. Geneva S. Dourisseau, the General Director of Labor Relations Program Administration for Defendant, attests in her declaration that the National Railway Carriers and United Transportation Union ("NRC/UTU") entered into a CBA to establish the NRC/UTU Health and Welfare Plan (the "Plan"). (*See* Dourisseau Decl. ¶ 1, ECF No. 76 Ex. 1). Defendant is a party to

that CBA, and the 1975 Health and Welfare Agreement applies to the Plan. (*Id.*). The railroads pay two premiums under the Plan: one for on-duty illness or injury, and one for off-duty illness or injury. (*Id.* ¶ 3). Defendant pays 100% of the premiums for the on-duty policy. (*Id.*).

Defendant attaches a copy of the 1975 Health and Welfare Agreement to Dourisseau's declaration. That agreement reads in relevant part:

> In case of an injury or a sickness for which an employee who is eligible for employee benefits . . . and may have a right of recovery against either the employing railroad or a third party tort-feasor . . . or both, benefits will be provided under the policy contract subject to the provisions hereinafter set forth. The parties hereto do not intend that benefits provided under the policy contract will duplicate, in whole or in part, any amount recovered from either the employing railroad or a third party tort-feasor for hospital, surgical, medical or related expenses of any kind specified in the policy contract, and they intend that benefits provided under the policy contract will satisfy any right of recovery against the employing railroad for such benefits to the extent of the benefits so provided. Accordingly,
>
> (1) benefits provided under the policy contract will be offset against any right of recovery the employee may have against the employing railroad for hospital, surgical, medical or related expenses of any kind specified in the policy contract.

(Health and Welfare Agreement, art. III, sec. A, Oct. 22, 1975, ECF No. 76 Ex. 1). This case therefore is analogous to *Folkestad*, and the Court will exclude Plaintiff's evidence of medical bills (to the extent such bills were paid by the Plan) for the purpose of proving damages. The payments from Defendant were not from a collateral source.

Plaintiff responds that Defendant has not proved that it actually paid Plaintiff's medical bills as opposed to the insurer, United Health Care ("UHC"). *Folkestad* and the fact that Defendant is a party to the 1975 Health and Welfare Agreement make this distinction inapposite. Plaintiff also alleges, however, that he personally contributed to the premiums for the UHC coverage. Defendant argues that Plaintiff only made contributions to an insurance plan that provides coverage for off-duty injuries or illness, and that it is not disputed that the injuries at issue occurred while Plaintiff was on duty. Even if Plaintiff had made some contribution to the relevant plan (the on-duty plan), this is

inapposite. The controlling factor is the intent of the parties in creating the fund: a pure fringe benefit versus indemnification for the employer. *Folkestad*, 813 F.2d at 1381. Plaintiff cites to a pre-*Folkestad*, pre-1975 Agreement case for the proposition that employee contributions to a disability fund will prevent offset. *See Gypsum Carrier, Inc. v. Handelsman*, 307 F.2d 525, 534 (9th Cir. 1962) ("The test is therefore whether the particular payments came from appellant. Clearly these did not. The California Disability Fund is supported primarily by employee contributions; it does not provide for direct contributions by employers at all, and appellant made none." (footnote omitted)). In *Handelsman*, the employer made no contributions at all to the relevant fund. Here, the employer alleges it pays 100% of the premiums, and Plaintiff only alleges that he makes some contribution. There is a bit of disagreement over who pays the premiums. The parties appear to be arguing over terminology. Dourisseau's explanation of the process could certainly be more clear, but it appears that instead of paying separate premiums for each individual employee, Defendant pays what Dourisseau calls a "payment rate" to UHC. The payment rate appears to be in substance a mass, undifferentiated premium the railroad pays to the insurer to cover all employees. Part of these payments are apparently made via withdrawals from Plaintiff's pay; hence, Plaintiff's "contributions" to the premiums. Plaintiff interprets "payment rate" as "payment rate schedule" and speculates that Defendant simply provides UHC with a payment schedule, and UHC then pays this amount with its own funds, supplemented by Plaintiff's contributions. This interpretation makes little sense. It would be strange for a health insurance company to pay the insurance premiums for its own insureds in whole or in part.

Plaintiff also alleges that he was personally obligated to pay, or incur indebtedness for, some medical bills for which UHC denied coverage. Plaintiff's medical expenses that were not paid by either Defendant or UHC is indeed be admissible to prove damages.

///

Finally, Plaintiff argues that Defendant has waived any objection to the admission of medical expenses evidence, because payment is an affirmative defense, and Defendant did not include this defense in its answer. *See* Fed. R. Civ. P. 8(c)(1), 12(b). In the context of offset, however, so long as each side addresses the issue before trial no prejudice results from a failure to plead an affirmative defense in the answer, and a district court has discretion to consider the defense despite failure to comply with Rule 8(c). *See Giles v. Gen. Elec. Co.*, 245 F.3d 474, 494–95 (5th Cir. 2001).

## CONCLUSION

IT IS HEREBY ORDERED that Defendant's Motion in Limine (ECF Nos. 64, 76, 77) is GRANTED. Evidence of medical expenses that have been paid by UHC or Defendant is excluded for the purpose of proving damages. Evidence of medical expenses that have not been paid by UHC or Defendant is not excluded.

IT IS SO ORDERED.

DATED: This 30th day of August, 2010.

_____
ROBERT C. JONES
United States District Judge